SCANLON, Appellant, v. CITY OF MENASHA and others, Defendants: FIRST NATIONAL BANK OF MENASHA, Respondent.

*April 3—May 1, 1962.*

438

For the appellant there was a brief by *Cooke & Loehning* of Neenah, and *Henry P. Hughes* of Oshkosh, attorneys, and *James R. Hebbe* of Oshkosh of counsel, and oral argument by *Mr. L. O. Cooke* and *Mr. Hughes.*

For the respondent there was a brief and oral argument by *Melvin F. Crowley* of Menasha, attorney, and *Harvey C. Hartwig* of Milwaukee of counsel.

HALLOWS, J.    Three issues are raised on this appeal, but in view of the disposition we make of the first question, it is unnecessary to consider the other two.  The basic question is whether the resolutions passed by the common council of the city of Menasha and the agreements executed by the parties were illegal and void because of the failure of the common council to first refer the transaction to the city plan commission under sec. 62.23 (5), Stats.  We have come to the conclusion that the resolutions and agreements are void.

The trial court held the provisions of sec. 62.23 (5), Stats.,[1] were discretionary and not mandatory and did not limit the general grant of powers of the common council as declared in sec. 62.11 (5).

---

[1] "(5) *Matters referred to city plan commission.* The council, or other public body or officer of the city having final authority thereon, shall refer to the city plan commission, for its consideration and report before final action is taken by the council, public body, or officer, the following matters: The location and architectural design of any public building; the location of any statue or other memorial; the location, acceptance, extension, alteration, vacation, abandonment, change of use, sale, acquisition of land for or lease of land for any street, alley or other public way, park, playground, airport, area for parking vehicles, or other memorial

The appellant argues the express language in sec. 62.23 (5), Stats., by using the word "shall" requires the common council to submit to the commission the propriety of the sale of the so-called park property before taking final action. The defendant bank contends, in considering other sections of the statute relating to the city council's broad powers and the history and scope of sec. 62.23 (5), the word "shall" in that section must be construed as having a discretionary meaning and not a mandatory one. This argument is further advanced by the contention the majority of the members of the city plan commission represents the administration in control of the city since there are four city officials and only three citizens composing the commission, and thus the legislative intention could be inferred that a referral to the commission was not a jurisdictional prerequisite to the power of the council.

We must start with the proposition that a sale of the so-called playground property was a matter within the scope of the functions of the city plan commission. Since the transaction was in substance and was so treated by the parties as an exchange of the park property for the bank property and $7,500 boot money, the entire transaction fails if the common council is required to submit the sale of city property to the planning commission under sec. 62.23 (5), Stats.

A city council has power to sell public property under the powers granted by sec. 62.22 (1), Stats., and the city is not

or public grounds; the location, extension, abandonment or authorization for any public utility whether publicly or privately owned; all plats of lands in the city or within the territory over which the city is given platting jurisdiction by chapter 236; the location, character, and extent or acquisition, leasing, or sale of lands for public or semipublic housing, slum clearance, relief of congestion, or vacation camps for children; and the amendment or repeal of any ordinance adopted pursuant to this section. Unless such report is made within thirty days, or such longer period as may be stipulated by the common council, the council or other public body or officer, may take final action without it."

required to have a city plan commission. At least three years before this transaction took place, the city of Menasha did provide for a city plan commission and thus the statutory requirements of sec. 62.23 (5) must qualify the exercise of the council's powers which deal with matters within this section. In dealing with public property, a municipality is subject to such restrictions and limitations as the legislature may impose. *Wisconsin Gas & Electric Co. v. Fort Atkinson* (1927), 193 Wis. 232, 213 N. W. 873.

In construing sec. 62.23 (5), Stats., we must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished. *Worachek v. Stephenson Town School Dist.* (1955), 270 Wis. 116, 70 N. W. (2d) 657. The powers granted a city council to manage and control city property and to act for the good order of the city and for the health, safety, and welfare of the public are not unlimited, but are qualified by the language "except as elsewhere in the statutes specifically provided" appearing in sec. 62.11 (5).

The history of sec. 62.23 (5), Stats., does not show referral to the city plan commission was to be discretionary. The antecedents of this section are found in the Laws of 1909 (ch. 162, secs. 959–17*a* to 959–17*j*). The original statute used "shall" in some situations and "may" in other situations. In the amendments of 1917, 1919, and 1921,[2] these sections were either amended or renumbered, but the distinction between the mandatory words in some situations and discretionary language in others was retained. Sec. 959–17*f* became sec. 62.23 (2) (a) which again was revised by ch. 203, Laws of 1941, and part of it became sub. (5) under the title "Matters referred to city plan commission." The word "shall" has consistently been used in sec. 62.23 (5) since 1909.

---

[2] Ch. 404, Laws of 1917; ch. 400, Laws of 1919; and ch. 242, Laws of 1921.

There are other subsections within sec. 62.23, Stats., which use the word "may" to prescribe discretion in performing certain acts, *e.g.,* secs. 62.23 (6) (b) and 62.23 (7) (d). Respondents argue these two sections, referring to the official map of the city and to zoning, make notice and public hearing and referral a practically jurisdictional requirement and because notice and public hearing are not required in sec. 62.23 (5), the language of that section is only discretionary. We see no logic in this argument. On the contrary, if the public hearing is not to be held on the matter, it would seem consistent with the purpose of representative government that the common council should at least be required to submit such plans to the planning commission.

Generally, the word "may" is permissive when used in the statute,[3] and this is especially true where the word "shall" appears in close juxtaposition in other parts of the same statute. *United States v. Tapor-Ideal Dairy Co.,* footnote 3. The general rule is that the word "shall" is presumed mandatory when it appears in a statute.[4]

We find no uncertainty in the objectives contemplated by sec. 62.23 (5), Stats., or from the language thereof because it does not require the city plan commission to make a report either recommending certain action or disapproving it. The purpose of the city plan commission so far as related to the facts of this case is generally to develop and maintain a long-range plan relating to either the sale or acquisition of public property and its location and use. While its functions may be

---

[3] *Pittman Construction Co. v. Housing Authority of Opelousas* (D. C. La. 1958), 167 Fed. Supp. 517; *United States v. Tapor-Ideal Dairy Co.* (D. C. Ohio 1959), 175 Fed. Supp. 678.

[4] *State v. Zeimer* (1960), 10 Utah (2d) 45, 347 Pac. (2d) 1111; *Andrews v. Shepherd* (1959), 201 Va. 412, 111 S. E. (2d) 279; *Assessors of Springfield v. New England Tel. & Tel. Co.* (1953), 330 Mass. 198, 112 N. E. (2d) 260; *Escoe v. Zerbst* (1935), 295 U. S. 490, 55 Sup. Ct. 818, 79 L. Ed. 1566; *Vale v. Messenger* (1918), 184 Iowa 553, 168 N. W. 281.

advisory in many respects, it is an important function in municipal government if the municipality is to be developed in accordance with any long-term program of city improvement and if the city is to have a definite objective in its planning. The representatives of the public constituting the city council frequently change and some may not be aware of the long-term policies of the city. It is in the public interest that each municipality have a long-term plan of development which should be adhered to unless the common council at any particular time desires to change it after being fully informed. Only by such method can any consistency in the planning of the future development of a city be achieved.

It does not seem unnatural, illogical, or an unreasonable procedure for the legislature to require a mandatory referral to the planning commission of certain matters, and particularly the sale of city property. We hold, therefore, that sec. 62.23 (5), Stats., is mandatory and qualifies the exercise of the powers of the common council granted by sec. 62.11 (5), Stats.

The plaintiff raises two other issues, which may be dealt with briefly. We do not consider sufficient evidence was introduced at the trial to show the agreements entered into violated the statute of frauds because they did not contain all of the alleged oral terms of the transaction. Likewise, we do not need to decide whether there was an abuse of discretion on the part of the common council in passing these resolutions without first obtaining appraisals of the two properties. Nor are we concerned with the advisability of buying the old bank building to enlarge the present city hall. Abuse of discretion might, however, be based upon an inadequacy of the consideration no matter how honest the motives of the council were. Great inadequacy in consideration has a bearing on the abuse of discretion. *Hermann v. Lake Mills* (1957), 275 Wis. 537, 82 N. W. (2d) 167. The desirable

practice of having appraisals when city property is to be sold and of referring the matter to the city plan commission for a report was fully reviewed and set forth in *Newell v. Kenosha* (1959), 7 Wis. (2d) 516, 96 N. W. (2d) 845.

*By the Court.*—Judgment reversed.