STATE EX REL. ARNOLD, Relator and Appellant, v. COUNTY
COURT OF ROCK COUNTY, Respondent.

*No. State 191.  Argued May 7, 1971.—Decided June 7, 1971.*
(Also reported in 187 N. W. 2d 354.)

For the appellant there was a brief by *Garrigan, Keithley, O'Neal, Dobson, Elliott & DeLong* and *John E. Borgerding,* all of Beloit, and oral argument by *Mr. Borgerding* and *Mr. Theodore W. Harris* of Racine.

For the respondent the cause was argued by *Peter A. Peshek,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *John E. Sheehan,* district attorney of Rock county.

HALLOWS, C. J. Arnold, the secretary and executive director of the Beloit Housing Authority, had conversations on August 28, 29, and 30, 1970, with Robert Lockhart who was a Beloit construction contractor and who had been the accepted bidder for 75 low-cost-housing units to be constructed in Beloit. Three conversations occurred in Lockhart's office and a fourth conversation was held by telephone with Lockhart at his home. Lieutenant Richard Toler of the Rock county sheriff's department had microphones concealed under Lockhart's desk and wired to a recording mechanism which Toler surreptitiously monitored and operated to preserve the oral conversations. The telephone conversation was intercepted and recorded by Toler. Lockhart gave his written

consent for these electronic interceptions, but Arnold had no knowledge of them and did not consent thereto.

At the outset the state raises the question of whether the writ of prohibition is a proper remedy conceding this court has expanded the traditional role of the writ of prohibition of keeping inferior courts from acting beyond their jurisdiction when no adequate remedy by appeal or otherwise existed. *See State ex rel. Reynolds v. County Court* (1960), 11 Wis. 2d 560, 105 N. W. 2d 876; *State ex rel. Jefferson v. Roraff* (1969), 44 Wis. 2d 250, 170 N. W. 2d 691. Nonjurisdictional error is now recognized as a proper ground for the issuance of the writ when the appeal comes too late for effective redress or is inadequate, when there is a need for such intervention to avoid great hardship or the complete denial of the rights of a litigant, or when there is presented a question of great and immediate public concern. *Drugsvold v. Small Claims Court* (1961), 13 Wis. 2d 228, 108 N. W. 2d 648; *State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 143 N. W. 2d 437; *see also: State ex rel. Sucher v. County Court* (1962), 16 Wis. 2d 565, 115 N. W. 2d 611; *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 159 N. W. 2d 25.

The question of the propriety of the use of the writ was decided when this court took original jurisdiction on the ground the question involved the constitutionality of a new statute relating to the state's regulation of electronic surveillance and was of sufficient compelling interest to the public to warrant this court's immediate consideration. Although this case comes to us in the context of the admissibility of evidence, the statewide importance of an immediate determination of the underlying question makes *State ex rel. Cortez v. Board of Fire & Police Comm.* (1970), 49 Wis. 2d 130, 141, 181 N. W. 2d 378, and *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 173 N. W. 2d 175, inapplicable.

It is contended that the admission into evidence of recorded conversations obtained by electronic surveillance with the consent of only one party violates the fourth and fourteenth amendments of the United States Constitution. Arnold argues the use of electronic devices to intercept his conversation is a search within the meaning of the fourth amendment, *Berger v. New York* (1967), 388 U. S. 41, 51, 87 Sup. Ct. 1873, 18 L. Ed. 2d 1040, and being a search he is entitled to the constitutional protections applicable to search warrants. *See Katz v. United States* (1967), 389 U. S. 347, 354, 88 Sup. Ct. 507, 19 L. Ed. 2d 576. Arnold relied in his brief on *United States v. White* (7th Cir. 1969), 405 Fed. 2d 838. But prior to oral argument on this appeal, the Seventh Circuit's decision, which had been appealed to the United States Supreme Court, was reversed in *United States v. White* (1971), 401 U. S. 745, 91 Sup. Ct. 1122, 28 L. Ed. 2d 453.

In *White*, four justices held that electronic eavesdropping was permissible under the fourth amendment on the ground no constitutional right was involved because a defendant has no "justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police." 401 U. S. 745, 749, 91 Sup. Ct. 1122, 28 L. Ed. 2d 453. And, since a party to the conversation may disclose it, it may be intercepted by electronic eavesdropping. Although prior to this decision it was thought that *Katz v. United States, supra,* decided that electronic eavesdropping was not permissible under the fourth amendment, these four members of the supreme court stated they saw no such indication in *Katz* as applied to one party's consensual interceptions or to disturb the result reached in the *On Lee* Case.[1] A fifth member of

[1] *On Lee v. United States* (1952), 343 U. S. 747, 72 Sup. Ct. 967, 96 L. Ed. 1270, held the surveillance in that case did not violate the constitution because no trespass had occurred, and noted that eavesdropping of a conversation with the connivance of one

the court concurred in the judgment for the reasons set forth in his dissent in *Katz.* Four members of the supreme court dissented on various grounds. While this case is not satisfactory because of the diversity in its opinions, the disagreement on what the court's prior decisions meant, and plurality holding, nevertheless, it controls, for the time being at least, the issue of constitutionality raised in this case.

However, we think Arnold's conversations were privileged in character by statute and their admission in evidence by means of tape recordings would be in violation of the Wisconsin Electronics Surveillance Control Law, sec. 968.27 through sec. 968.33, Stats. This law, which was created by ch. 427, Laws of 1969, replaced Wisconsin's Wiretapping Law, sec. 885.36, prohibiting the admission into evidence of tape-recorded interceptions of telephonic conversations. The Electronics Surveillance Control Law expressly prohibits electronic interceptions of both wire and oral communications with some exceptions. In defining "oral communication," sec. 968.27 (2), states that term means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. The privileged character of wire and oral communications is also recognized in sec. 968.29 (4).

While such expectation of privacy may not have a constitutional basis under *White,* that is immaterial since this recognition of confidentiality is important in the process of discovering the legislative intent in an area of eavesdropping which was condemned by the common law. In considering a statute, the court must seek the legislative intent as disclosed from the language of the

of the parties raised no fourth amendment problem. The plurality in *White* viewed these two independent grounds and concluded that although *Katz* had swept away the trespass theory of fourth-amendment protection, it did not affect the consensual eavesdropping on which it ruled *On Lee* was also based.

statute in relation to its scope, history, context, subject matter, and object intended to be remedied or accomplished. *Scanlon v. Menasha* (1962), 16 Wis. 2d 437, 114 N. W. 2d 791.

The American people are rightly jealous of their freedom of privacy and from "bugging" by the police. While the demands of our complex society require improved methods of crime detection, they do not require that a citizen's right of privacy must be indiscriminately invaded by electronic surveillance or may be invaded with the consent of only one party to a wire or oral conversation having a privileged character.

The basic authorization for an electronic eavesdropping is restricted in sec. 968.28, Stats., which requires a law enforcement officer to apply to a circuit court for an order authorizing or approving the interception of a wire or oral communication. Such authorization is permitted only when the intervention may provide evidence or if a prior restricted authorization has produced evidence of the commission of certain offenses. These crimes are restricted to murder, kidnapping, commercial bribery, extortion, and dealing with narcotics or dangerous drugs or conspiracy involving such offenses.

The use and disclosure of authorized intercepted wire and oral communications is dealt with in sec. 928.29, Stats. In subs. (1) and (2), law enforcement use of such material is restricted to use in the exercise of the proper performance of professional duties in the investigative process; and by sub. (3), disclosure is only permitted by a person who has received such information by authorized means and which was intercepted in accordance with the state act. The results of such interceptions may be disclosed only while giving testimony under oath or affirmation in a court proceeding or before a magistrate or a grand jury. No other privileged wire or oral communication, although intercepted in

accordance with or in violation of state law or federal law relating to electronic surveillance, loses its privileged character.

There is an exception to this rule of privileged communications in sub. (5) which provides that when an authorized-court interception discloses material relating to an offense other than that specified in the order authorizing the interception, such information may be used in the proper performance of official duties by a law-enforcement officer. But, if the results of such interception are to be used as evidence in court, an application must be made within forty-eight hours of the interception to the judge who acted upon the original application. Such judge may authorize the use of such interception as evidence if he finds the interception was otherwise in accordance with the state and federal electronic surveillance laws, sec. 968.29, Stats.

The act provides in sec. 968.30, Stats., a detailed procedure for the application to a court for authority for an order authorizing or approving the interception of wire and oral communications. Included in the requirements is a showing of probable cause and the details of the particular offense alleged about to be committed, the description of the nature and location of the facilities, a description of the type of communication sought to be intercepted, the identity of the persons and a full and complete statement of whether or not other investigatory procedures have been tried and failed and other details. The interceptions are limited in time and the court may require the applicant to furnish testimony or documentary evidence under oath in support of the application.

In sec. 968.31, Stats., the act deals with the prohibited interceptions and disclosures of wire and oral communications. Certain penalties are prescribed for intentional interception and disclosure of such intercepted communications. Exceptions to these penalties are made in sec. 968.31 (2) (a), which allows limited interceptions

by an operator of a switchboard and employees of telephone utilities while they are engaged in the activity of protecting the rights of their employer. Exception is also made in sub. (b) for a person acting under color of title to intercept oral communications where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception. It is this section (968.31 (2) (b)), which the state claims authorizes both the interceptions in this case and the use in evidence of the results of such interception. This section does not "authorize" interceptions when one of the parties to the conversation has given prior consent but merely states such interception is "not unlawful."

We think the admissibility into evidence of the contents of eavesdropping interceptions is governed solely by sec. 968.29 (3), Stats., and only communications "intercepted in accordance with" the state law may be disclosed by being admitted in evidence. An interception by a person under color of law who intercepts with the consent of one party but without the approval of a circuit court is not "intercepted in accordance with" as required in sec. 968.29 (3). Nor is such interception "any means authorized by ss. 968.28 to 968.33 . . ." While making such interception not unlawful, sec. 968.31 (2) (b), does not "authorize" it as a procedure which is done by sec. 968.30 requiring an application for electronic surveillance to the circuit court.

Interception is one thing; disclosure as evidence in court is another. In declaring interceptions with consent of one party "not unlawful" the act recognizes the need of this investigative tool to detect crime, but in denying its use as evidence the statute recognizes in the balance the right of privacy of free people. Consequently, such activities by the police may well be excepted from the penalties of sec. 968.31 but it does not follow from

this exception that the results of such interceptions stand on an equal footing with those authorized by the court under sec. 968.30, and are therefore admissible in evidence. If electronic surveillance is to produce evidence in court on the basis of consent of one party to the conversation, then there is no privileged communication and it was entirely useless to include in the act the careful delineated provisions under which admissible evidence might be obtained by electronic surveillance with court approval. All the safeguards of sec. 968.30 would be for naught and be supplanted by the consent of one party to a privileged communication. Likewise, sec. 968.29 (4), preserving the privileged character of a communication would be meaningless.

The Wisconsin Electronics Surveillance Control Law was patterned after Title III of the federal Omnibus Control and Safe Streets Act of 1968. 18 USCA 2510, *et seq.* The United States Supreme Court has not interpreted these sections of the federal act although in *United States v. White, supra,* Mr. Justice HARLAN in his dissent in commenting on another issue stated by way of dicta the federal act exempts consensual and participant monitoring by law enforcement agents from the general prohibitions against surveillance without judicial authorization and makes the fruits admissible in court. We do not think the language of the Wisconsin statute means that or can be reasonably construed to reach such a result. While the United States law was based in the context of the holdings in *On Lee* and *Lopez,*[2] it was also enacted in the context of *Berger v. New York* and *Katz v. United States, supra,* which require the warrant procedure as a basis for the admissibility into evidence of the fruits of electronic eavesdropping.

---

[2] *On Lee v. United States, supra,* footnote 1. *Lopez v. United States* (1963), 373 U. S. 427, 83 Sup. Ct. 1381, 10 L. Ed. 2d 462; *see* So. Rep. No. 1097 at 93.94 (90th Cong., 2d Sess., 1966).

*The Standards Relating to Electronic Surveillance* of the American Bar Association approved March, 1971, provides in Standard 4.1 that "The surreptitious overhearing or recording of a wire or oral communication with the consent of, or by, one of the parties to the communication should be permitted, unless . . ." This standard was a change after the passage of the federal act from the original standard which required the consent of all parties. Standard 5.16 closely parallels the federal law and sec. 968.29, Stats., allowing disclosure by testimony in court only if the contents of the interceptions were "obtained by means authorized by these standards." Under this standard, the question still is, what means are authorized?

While the electronic interceptions in this case were "not unlawful" because of the consent of Lockhart, we hold that his consent does not destroy the privileged character of communications and the means were not "authorized" or "in accordance with" the Wisconsin Electronics Surveillance Control Law. Consequently, the results of the interceptions are not admissible in evidence in chief as qualifying under sec. 968.29 (3), Stats.

*By the Court.*—The temporary injunction restraining the county court of Rock county from proceeding with the case entitled "State of Wisconsin v. George Arnold," is hereby terminated and the writ of prohibition is made absolute.

ROBERT W. HANSEN, J. (*dissenting*). In a football game, a forward pass is "intercepted" when a member of the opposing team, uninvited and unwelcome, comes between the passer and the intended receiver and grabs the pigskin. Is it also "intercepted" when it is relayed or thrown to a teammate, with the full consent and cooperation of either passer or receiver or both?

In answering affirmatively an evidentiary equivalent of this gridiron-oriented query, the majority ignores the distinction between the *recording* of an oral conversation

by or on behalf of a party to it and the uninvited *surveillance* of a private conversation by an outsider. Others have not, including the United States Supreme Court,[1] the American Bar Association advisory committee on the police function,[2] and law review contributors.[3]

[1] ". . . We thus deal here not with surreptitious surveillance of a private conversation by an outsider . . . but . . . with the use by one party of a device to make an accurate record of a conversation about which that party later testified. . . ." *Osborn v. United States* (1966), 385 U. S. 323, 327, 87 Sup. Ct. 429, 17 L. Ed. 2d 394 (holding admissible in evidence).

[2] ". . . the law must always seek to obtain the best and most reliable evidence. Traditionally, that evidence has consisted mainly of the testimony of witnesses who saw or heard what they later reveal in court. No man knows better, however, the fallibility of human testimony than that man who is trained in the law. . . . [E]very effort should be made to record the conversations through the best available means. For a recording will reproduce the very words spoken with all the added significance that comes from inflection, emphasis and other aspects of oral speech. . . . The goal of finding the truth in the criminal trial demands no less. The defendant, too, has a stake in the best evidence being presented to the court and jury. Thus, recording as such 'involves no "eavesdropping" whatever in any proper sense of that term.' *Lopez v. United States*, 373 U. S. 427, 439. [(1963), 83 Sup. Ct. 1381, 10 L. Ed. 2d 462] It should not be unthinkingly placed in the same category with wiretapping or bugging. . . ." American Bar Association, *Standards Relating to Electronic Surveillance*, sec. 4. 1 a, pages 126, 127.

[3] ". . . Every time we engage in a conversation we run the risk that the other party may betray us. He may reveal what we have said. . . . Such risks are inherent in human relationships. They are in essence no different from the risk that the person in whom we confide has arranged to record or broadcast what we say . . . . This is a distinction in degree but not in essence.

"Where a conversation is recorded or transmitted *without* the consent of any participant, an entirely different set of concepts must apply. . . ." (Emphasis supplied.) *The Wiretapping-Eavesdropping Problem: A Defense Counsel's View*, Edward Bennett Williams, 44 Minn. L. Rev. (1960), 855, 866. *See also:* Schwartz, *On Current Proposals to Legalize Wiretapping*, 103 U. Pa. L. Rev. (1954), 157, 166, 167.

The distinction between a participant's recording and an outsider's purloining of a private conversation is significant. It is the uninvited surveillance of the outsider that is the subject of federal [4] and state [5] regulatory measures, and United States Supreme Court decisions finding constitutional limitations to "bugging" or "wiretapping" without the consent of any of the parties on the line. The same court, highest in the land, has made clear that, as to constitutional or statutory attack, the party to an oral conversation need not rely upon memory alone, [6] and may transcribe or record the contents of a telephone conversation had with another person. [7] This

---

[4] *The Omnibus Crime Control and Safe Streets Act of 1968,* 18 USCA 2510, *et seq.*

[5] Wisconsin Electronic Surveillance Law, ch. 427, Laws of 1969, secs. 968.27 to 968.33, Stats.

[6] "Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument could justify excluding an accurate version of a conversation that the agent could testify to from memory. [The trustworthiness of the recording is not challenged.] We think the risk that petitioner took in offering a bribe to Davis [an internal revenue inspector] fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording." *Lopez v. United States* (1963), 373 U. S. 427, 439, 83 Sup. Ct. 1381, 10 L. Ed. 2d 462.

[7] "In previous cases, which are undisturbed by today's decision, the Court has upheld, as reasonable under the Fourth Amendment, admission at trial of evidence obtained (1) by an undercover police agent to whom a defendant speaks without knowledge that he is in the employ of the police, *Hoffa v. United States,* 385 U. S. 293 (1966) ; (2) by a recording device hidden on the person of such an informant, *Lopez v. United States,* 373 U. S. 427 (1963); *Osborn v. United States,* 385 U. S. 323 (1966) ; and (3) by a policeman listening to the secret micro-wave transmissions of an agent conversing with the defendant in another location, *On Lee v. United States,* 343 U. S. 747 (1952). When one man speaks to

he may do in a variety of ways, including holding the phone away from his ear so that someone can hear what is being said,[8] having the wife or secretary listen on an extension,[9] or by use of a recording device attached to the phone.[10] When he is entitled to testify as to the content of such conversation, in the language of the American Bar Association commentary, ". . . there can be no valid objection to the use of an overhearing or

another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. . . . It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another. . . ." *Katz v. United States* (1967), 389 U. S. 347, 363, 88 Sup. Ct. 507, 19 L. Ed. 2d 576. (Mr. Justice WHITE, concurring.)

[8] ". . . The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose. . . . The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. . . ." *Rathbun v. United States* (1957), 355 U. S. 107, 110, 111, 78 Sup. Ct. 161, 2 L. Ed. 2d 134.

[9] "The case is thus quite similar to *Rathbun v. United States*, 355 U. S. 107, in which we sustained against statutory attack the admission in evidence of the testimony of a policeman as to a conversation he overheard on an extension telephone with the consent of a party to the conversation." *Lopez v. United States, supra*, at page 439.

[10] ". . . Indeed this case involves no 'eavesdropping' whatever in any proper sense of that term. The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose. And the device . . . neither saw nor heard more than the agent himself." *Lopez v. United States, supra*, at page 439. (Where an internal revenue inspector, equipped with a pocket wire recorder, recorded his conversation with a bribe-offering cabaret owner.)

recording device, and the introduction of its product at trial. . . ." [11]

As to the use of such recorded corroboration during the case-in-chief, the majority reaches a contrary conclusion by making the recording of the conversation by or for a participant the exact equivalent of electronic surveillance by an outsider. This is painting a mule to resemble a zebra, and then going zebra hunting. But paint does not change the mule into a zebra.

The appellant housing official, accused of soliciting a bribe, sought to have the recording of his conversation with the contractor barred on constitutional grounds. The majority concedes, almost reluctantly, that the ground was cut from under such contention by the recent United States Supreme Court decision, reversing a federal court of appeals and finding no constitutional barrier to introduction of a recording of a conversation, identity and accuracy established, in a bribery case. [12] That the person at the other end of the line was "wired for sound" created no constitutional bar to receiving into evidence the recorded version of the conversation, recorded with consent of one of the parties to it. [13]

---

[11] American Bar Association, *Standards Relating to Electronic Surveillance*, sec. 4. 1 a at page 127.

[12] ". . . If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case." *United States v. White* (1971), 401 U. S. 745, 752, 91 Sup. Ct. 1122, 28 L. Ed. 2d 453.

[13] "Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his. In terms of what his course will be, what he will or will not do or say, we are unpersuaded that he would distinguish between probable informers on the one hand and probable informers with transmitters

Nor is it contended by anyone that the Wisconsin Electronic Surveillance Law makes unlawful the recording of a conversation with the consent of a participant in such conversation. That could hardly be claimed where the Wisconsin statute (sec. 968.31 (2)) specifically provides:

"It is not unlawful under ss. 968.28 to 968.33: . . .
"(b) For a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

The exception or exemption exactly describes the situation in the case before us. Whether it is considered that the police officer acted as agent for the contractor or whether the contractor did no more than give consent for the recording of his conversation with the housing official, the record here requires the finding that the recording made is entirely legal and specifically excluded from the surveillance control statute. However, the majority concludes that while the procedure followed is specifically declared legal and proper, the legislature intended only that the participant in a conversation may record it, not use it. He may make a recording, but it may not be used as evidence of what was actually said during the conversation recorded even though it clearly is the best evidence of what was said and by whom.[14] If he

on the other. Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound. . . ." *Id.* at page 752.

[14] ". . . An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress

intends to use the record of what transpired to corroborate his testimony or exonerate himself from charge or suspicion of wrongdoing, he must secure court authorization in advance for recording what he said and what was said to him.[15] Of course, he can follow this suggested procedure only if a major felony is suspected, or likely to be established.[16] If he had reason to believe that the prospective caller will do no more than threaten his life or make obscene remarks to his wife, he cannot be given court approval in advance, and the record made is not admissible as evidence in any court proceeding. Such strange and strained construction is not to be found in the law. It has to be read into it. As has been held in construing the similar federal statute,[17] after which the Wisconsin law was patterned, the writer would find

unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question." *Id.* at page 753.

[15] Sec. 968.28, Stats., provides: "The attorney general together with the district attorney of any county may approve a request of an investigative or law enforcement officer to apply to the circuit court in the county where the interception is to take place for an order authorizing or approving the interception of wire or oral communications. . . ."

[16] Sec. 968.28, Stats., provides: ". . . The authorization shall be permitted only when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, commercial gambling, bribery, extortion and dealing in narcotics or dangerous drugs or any conspiracy to commit any of the foregoing offenses."

[17] ". . . Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of section 605, *interception*, has not occurred." (Emphasis in original.) *Rathbun v. United States, supra,* at page 111.

no statutory basis for holding inadmissible as evidence a record of a conversation made by or on behalf or with the consent of a participant in such conversation.

So the writer dissents—finding the statute involved not to apply to the recording here made by a police officer with full consent of the contractor who claims the appellant solicited a bribe from him. However, the writer concurs with the majority holding that, if the statute is somehow to be construed to ban such admission into evidence as part of the case-in-chief of the state in this case, it does not bar the use of such recorded evidence.

This is an extension of the approach followed in the case where this court limited the use of prior inconsistent statements as substantive evidence to impeachment situations, requiring that, ". . . the witness has testified to the same events in a contrary manner in the present proceedings." [18] In thus limiting the use of prior inconsistent statements to when the party testifies in a contrary manner, this court anticipated the approach taken by the United States Supreme Court as to constitutionally defective confessions. [19]

In *Harris,* because no warning of a right to appointed counsel was given before questions were asked, statements made by the defendant to the police were constitutionally inadmissible. The United States Supreme Court ruled in *Harris* that:

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." [20]

---

[18] *Gelhaar v. State* (1969), 41 Wis. 2d 230, 241, 163 N. W. 2d 609.

[19] *Harris v. New York* (1971), 401 U. S. 222, 91 Sup. Ct. 643, 28 L. Ed. 2d 1.

[20] *Id.* at page 226.

What was applied to a constitutionally inadmissible admission made to police, *i.e.,* permitting its use for impeachment purposes, applies as well to a recording of a conversation with consent of a participant, constitutionally admissible and statutorily declared to be not illegal for the reason well stated in *Harris:*

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. . . ." [21]

While finding no sound reason for not admitting into evidence the challenged recording at any stage of the proceeding, the writer concurs in the majority's modifying the request for writ of prohibition to include only admission into evidence during the presentation of the case-in-chief. For here, as in *Harris,* use of the recorded conversation for impeachment purposes—on the issue of credibility—is to do no more than to ". . . utilize the traditional truth-testing devices of the adversary process . . ." [22] and to recognize that:

"The function of a criminal trial is to seek out and determine the truth or falsity of the charges brought against the defendant. . . ." [23]

The writer is authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.

---

[21] *Id.* at page 225.

[22] *Id.* at page 225.

[23] *Lopez v. United States, supra,* at page 440.