WYOMING DEPARTMENT OF EMPLOYMENT, DIVISION OF UNEMPLOYMENT INSURANCE, Petitioner,

v.

The Honorable H. Hunter PATRICK, Respondent.

No. 91–79.

Supreme Court of Wyoming.

Sept. 25, 1991.

William G. Hibbler, Sr. Asst. Atty. Gen., Casper, for petitioner.

Richard J. Albanese, Deputy Park County Atty., Cody, for respondent.

Before URBIGKIT, C.J., CARDINE and MACY, JJ., and SPANGLER and TAYLOR, District Judges.

---

## OPINION

SPANGLER, District Judge.

Petitioner Wyoming Department of Employment, Division of Unemployment Insurance was granted a Writ of Certiorari to review a search warrant issued by Respondent District Judge H. Hunter Patrick. The warrant authorized a warden for the Wyoming Game and Fish Department to search the Employment Security Commission Building in Casper. The warden was authorized to seize records "pertaining to John R. Billings dba Open Creek Outfitting for the year 1990, including quarterly wage reports for all four quarters of 1990; and all records kept by the Employment Security Commission for the year 1990 for account no. 050382004."

The accompanying affidavit alleged that information had been received indicating Mr. Billings allowed nonresident hunters to hunt without guides or to be guided by persons without valid Wyoming guide licenses. The warden sought information as to the identity of the firm's employees.

Petitioner filed a motion to quash the search warrant. After a hearing, Respondent denied the motion. Petitioner now asks this Court to reverse the Respondent's order. We will deny the relief sought in the petition.

The issue is framed by Petitioner as follows:

Whether W.S. § 27–3–603 prohibits disclosure, pursuant to a search warrant, of confidential information obtained from an employer in accordance with the Wyoming Employment Security Law [W.S. § 27–3–101 through § 27–3–704] and contained within the files of the Wyoming Department of Employment, Division of Unemployment Insurance?

Wyo.Stat. § 27–3–603 (1991) states:

Except as otherwise provided, information obtained from any employing unit or individual pursuant to this act and any determination of benefit rights shall not be disclosed in a manner which reveals the identity of the employing unit or individual. The confidentiality limitations of this section do not apply to transfers of information between the divisions of the department of employment so long as the transfer of information is not restricted by federal law, rule or contract. Any employee who discloses information outside of the department in violation of federal or state law may be terminated without progressive discipline.

The exceptions to confidentiality contained in § 27–3–603 are further enlarged in Wyo.Stat. § 27–3–607 (1991). That section allows access to Petitioner's records upon the request of a number of entities, including any federal agency administering public works programs or public employment assistance, any state or political subdivision if wage information is determined to be necessary by federal regulation, any state or local child support enforcement agency, the United States Department of Agriculture and any state food stamp agency, the Department of Housing and Urban Development and other public housing agencies, the Railroad Retirement Board, any state or federal agency administering public employment services, unemployment compensation laws, or federal tax laws, the United States Bankruptcy Trustee, the State Auditor's office, the Workers' Compensation Division, the Industrial Siting Administration, and the Economic Development and Stabilization Board.

Section 27–3–607(c)(v) contains another exception to the confidentiality requirement:

(c) The department may:

\* \* \* \* \* \*

(v) Allow access to information obtained pursuant to the administration of this act to the division of criminal investigation of the attorney general's office, upon a written request by the director which demonstrates there is a reasonable basis to believe the health or safety of a person is in danger and the information may lead to the elimination of that danger[.]

Given all these exceptions to the confidentiality of unemployment insurance records, it would be an anomaly to conclude that a purpose of the confidentiality statute

is to protect the records from search warrants.

Wyo.Stat. § 7-7-101 (1987) contains the general authority for issuance of search warrants. This power is subject to the fourth amendment to the United States Constitution; article 1, section 4 of the Wyoming Constitution; W.R.Cr.P. 40; and numerous Court decisions. It is not reasonable to interpret the statutes to say that a game warden who complies with the strict requirements of obtaining a search warrant from a judge or a court commissioner cannot obtain records which are apparently only a telephone call away for a host of other government agents who do not need to establish probable cause or obtain judicial authorization.

The parties do not cite any cases dealing directly with the issuance of search warrants for confidential government records. Reference is made to cases in which such records are subpoenaed. The results in those situations are various, depending in many instances upon the wording of particular statutes. It should be noted that the requirements for obtaining a search warrant are generally more exacting than those for obtaining a subpoena.

Petitioner includes *Gale v. State*, 792 P.2d 570 (Wyo.1990), in this line of cases. In that case, this Court adopted a procedure for judicial review of certain confidential records which had been subpoenaed by the defense in a criminal trial. The ruling was that the trial judge is to focus on the privileged materials at issue, on the defendant's ability to gather such evidence from other sources, and on how the privileged evidence may relate to the defendant's theory of the case.

From the rule in *Gale*, Petitioner argues that there should be an inquiry into whether the information contained in confidential records can be obtained elsewhere. The statutes governing unemployment insurance records do not place such a restriction upon any of the various agencies which have access. We are not aware of any case demanding that such an inquiry be made before the issuance of a search warrant generally. Finally, we are not confronted in this instance with the competing claims of due process and confidential records of a personal and sensitive nature as were before the Court in *Gale*.

We do not find the purpose of our laws is to shield the records of the Division of Unemployment Insurance from search warrants. The relief sought by Petitioner is denied.

CARDINE, J., files a dissenting opinion in which URBIGKIT, C.J., joins.

CARDINE, Justice, dissenting, with whom URBIGKIT, Chief Justice, joins.

I dissent. The decision of the court today allowing the State to obtain by search warrant what the State is prohibited from obtaining by statute will have a significant, detrimental impact upon the operation and functioning of the Unemployment Insurance Commission. Some employers may refuse to report at all. Perhaps they cannot be required to report if incrimination results. Reports furnished will be suspect, accuracy doubtful. The Commission will encounter difficulty assembling correct information and data necessary to determining change in contribution and benefit rates and funding liability for future benefits payments.

Pursuant to W.S. 27-3-602(a)(i), the Commission is empowered to adopt rules, make expenditures, require reports, make investigations and take other like action. The State requires that an employer report much data and information upon the express promise and covenant that the employer will have a right of privacy in such information and the identity of the employee will not be disclosed per W.S. 27-3-603, which states in part:

"Except as otherwise provided, information obtained from any employing unit or individual pursuant to this act and any determination of benefit rights *shall not be disclosed in a manner which reveals the identity of the* employing unit or *individual.*" (emphasis added)

Thus, the State assures confidentiality. Now the State itself, acting through its prosecuting attorney, dishonors that assur-

ance and seeks the very information it agreed would be confidential. The Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution protect people against unreasonable search and seizure. The Fifth Amendment to the United States Constitution and Article 1, § 11 of the Wyoming Constitution protect against self-incrimination. These two provisions of the state and United States constitutions function in tandem to assure significant rights and freedoms to the populace. Thus, *Davis v. United States*, 328 U.S. 582, 587, 66 S.Ct. 1256, 1258, 90 L.Ed. 1453 (1946), stated:

"[The law of searches and seizures] reflects a dual purpose—protection of the privacy of the individual, his right to be let alone; protection of the individual against compulsory production of evidence to be used against him. *Boyd v. United States*, [116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)]; *Weeks v. United States*, [232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)]. *And see Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494 [90 L.Ed. 614, 166 A.L.R. 531 (1946)]."

The United States Constitution sets a minimum or a floor for constitutional rights guaranteed to the people. The State of Wyoming may not diminish these protections against unreasonable search and seizure and against self-incrimination, but it may expand these rights and afford greater protection against their violation than does the federal Constitution. Thus, the United States Supreme Court, in discussing the application of exclusionary rules involving the Fourth (unreasonable search and seizure) and Fifth (self-incrimination) Amendments to the United States Constitution, in *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972), stated:

"Of course, the States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they find at stake."

The Wisconsin Supreme Court, in a case involving the effect of a state statute af-

fording greater protections to wiretap communications than the United States Supreme Court had allowed in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), stated:

"While such expectation of privacy may not have a constitutional basis under *White*, that is immaterial since this recognition of confidentiality is important in the process of discovering the legislative intent in an area of eavesdropping which was condemned by the common law. In considering a statute, the court must seek the legislative intent as disclosed from the language of the statute in relation to its scope, history, context, subject matter, and object intended to be remedied or accomplished. *Scanlon v. City of Menasha* (1962), 16 Wis.2d 437, 114 N.W.2d 791." *State ex rel. Arnold v. County Court of Rock County*, 51 Wis.2d 434, 187 N.W.2d 354, 357 (1971).

The court then, granting greater protection than the federal government for evidence gathered by electronic surveillance (wiretapping) held that:

"Arnold's conversations were privileged in character by statute and their admission in evidence by means of tape recordings would be in violation of the Wisconsin Electronics Surveillance Control Law * * *." *Id.* 187 N.W.2d at 357. *See also State v. Collins*, 297 A.2d 620, 627 (Me. 1972), and *State v. Santiago*, 53 Haw. 254, 492 P.2d 657, 664 (1971).

The Wyoming legislature has, by enactment of W.S. 27–3–601 through 27–3–610 evidenced an intent to afford greater rights to employers than might otherwise be identified.

I agree that the seminal issue presented for resolution by the court is the question of legislative intent in the adoption of W.S. 27–3–603. The issue is identified in the majority opinion as whether it is

"reasonable to interpret the statutes to say that a game warden [by search warrant] cannot obtain records [of an employer] * * *." Maj. op. at 55.

We look first to the statute to determine legislative intent. If the statute is plain and unambiguous, there is no need to go

beyond it. The intent of the legislature will be ascertained as nearly as possible from the words and language used in the statute, which must be viewed in light of its objective and purpose. *Department of Revenue and Taxation, Motor Vehicle Div. v. Andrews*, 671 P.2d 1239 (Wyo.1983). We follow the rule that, if the language of the statute is clear and unambiguous, we must accept and apply the plain meaning of that language. *State v. Denhardt*, 760 P.2d 988, 989–90 (Wyo.1988); *Phillips v. State*, 760 P.2d 388 (Wyo.1988). When the words used are unambiguous, a court risks an impermissible substitution of its own views for the intent of the legislature if it interprets or construes statutes on a basis other than the language invoked by the legislature. Our precedent demonstrates that this rule is an absolute. If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. *Blue Cross Ass'n v. Harris*, 664 F.2d 806 (10th Cir.1981); *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo.1989). This inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be effective without judicial adjustment or gloss. *Allied–Signal, Inc. v. Board of Equalization*, 813 P.2d 214 (Wyo. 1991). Moreover, we must construe a legislative enactment in such a manner as to give effect to all of its provisions. In accomplishing this task, we presume that the legislature intended that each section was a necessary component of the statutory scheme and not surplusage. *United States v. Roy*, 830 F.2d 628, 634 (7th Cir.1987).

The clear language of Art. 6 of the unemployment compensation statutes demonstrates a legislative intent and purpose that confidential information revealed in compliance with the Commission's rules and requirement of law is not discoverable by search warrant for the purpose of criminal prosecution.

Wyoming Statute 27–3–603 provides in part:

> *"Except as otherwise provided, information* obtained from any employing unit or individual pursuant to this act and any determination of benefit rights *shall not be disclosed in a manner which reveals* the *identity* of the employing unit *or individual."* (emphasis added)

Disclosure "otherwise provided" is found in W.S. 27–3–607 as follows:

> (a)(i) to federal agencies to assure compliance with federal regulations governing expenditure of funds paid to the State under 42 U.S.C. § 501 *et seq.;*
> (a)(ii) to any federal agency administering public works programs or public employment assistance;
> (a)(iii) to agencies for the purpose of determining eligibility for assistance under 42 U.S.C. § 601 *et seq.*, Division of United States Health and Human Services;
> (a)(iv) to any state or child support enforcement agency pursuant to 42 U.S.C. § 654;
> (a)(v) to the United States Department of Agriculture and any food stamp agency; and
> (a)(vi) to the Department of Housing and Urban Development as required by the McKinney Homeless Act of 1988 § 904(c).

Information to the above agencies must be supplied upon request, and the agency must agree that, with respect to paragraphs (a)(iv) and (a)(v), information supplied be used only for establishing and collecting child support obligations or locating individuals and for determining an applicant's eligibility for benefits under the food stamp program. Information supplied under (a)(i) through (a)(iii) is for the purpose of determining rights and benefits to and for expenditure of funds under federal programs. The Act also contains requirements for confidentiality and penalties for improper disclosure and use of the information. W.S. 27–3–602(d); W.S. 27–3–603.

Subsection (c) of W.S. 27–3–607 provides that the department *may* disclose copies of records to the Railroad Retirement Board;

agencies administering public employment services, unemployment compensation laws, or federal tax laws, and to the office of the United States bankruptcy trustee; to the state auditor's office and the Division of Worker's Compensation to be used only for the detection of improper or fraudulent claims or the determination of potential tax liability or employer compliance with notification, registration, certification, or other requirements.

The above provisions for disclosure of specified information, when read in *pari materia* with W.S. 27-3-603, providing for confidentiality, evidences a clear intent on the part of the legislature to disclose such information for specific purposes only, such as determining the right to public assistance, eligibility for assistance, eligibility for food stamps, locating and enforcing child support obligations, and comparing information to better administer the unemployment compensation laws and benefit programs. The Act evidences a rather clear intent of the legislature to permit disclosure for the purpose of ascertaining the right to benefits under the several federal and state programs and to determine eligibility for benefits under those programs. There can be found no expression of intent to permit the disclosure of this confidential information for the purpose of prosecution under criminal statutes totally unrelated to unemployment compensation.

The intent of the legislature that this confidential information not be disclosed for such criminal prosecutions is further demonstrated in W.S. 27-3-607(c)(v), which provides that the Division of Criminal Investigation, upon written request demonstrating a reasonable basis to believe the health and safety of a person is in danger, may request information for the purpose of elimination of that danger. The Department, in its discretion, may release the information; and, if released, such information may be used by the Division of Criminal Investigation, not for the prosecution of crime, but only to eliminate danger to the health and safety of a person. If legislative intent had been to make this information available for any criminal prosecution,

it surely would have provided for its release to the state's chief law enforcement agency—but it declined to do so.

The final, clear, conclusive expression of legislative intent with respect to the confidentiality of information provided in W.S. 27-3-603 is found in W.S. 27-3-602(c), (d) and (e) providing for obtaining information through subpoena, testimony, depositions, and production of books, papers or other records. Subsection (d) provides for the issuance of a subpoena for attendance of witnesses, taking of testimony, and production of books, papers or other records. Subsection (d) provides for compliance with the subpoena by order of a district court, and, upon refusal to appear and produce evidence, for punishment of contempt by fine and imprisonment. Subsection (e) of the statute then provides that a person shall not

"be incriminated for providing testimony or evidence under subsection (c) of this section except for perjury committed during testimony."

Thus, a person supplying information pursuant to subpoena or order of the court will not incriminate himself. Perhaps in the future an employer would be wise to submit reports and information to the Commission only pursuant to subpoena or court order. The above statutes, read in *pari materia*, plainly demonstrate a legislative intent that information supplied because of compulsion will not incriminate the supplier.

It is clear from reading together W.S. 27-3-601 through 27-3-610 that honest, truthful, accurate reports of data and information are necessary to the Commission to establish a sound actuarial compensation system, set the amount of contributions necessary to fund the system, and provide a fund against liability for future benefit payments. The intent of this legislation was to assure the filing of accurate reports of information and data by providing for confidentiality and providing also that information be disclosed only for limited necessary purposes in administering other acts, benefits and entitlements—not for the purpose of criminal prosecution.

These legislative enactments provide for restrictions on disclosure and for severe penalties for unauthorized disclosure or use of information for purposes other than for which disclosed. The intent of the legislature clearly was to assure that data and information disclosed pursuant to compulsion could not be used to incriminate a person except with respect to the truthfulness of the information itself. The data and information supplied to the Commission is in all instances subject to compulsion by statute, rule, regulation, subpoena, or court order. Thus, the person supplying the information may not be prosecuted for violation of criminal statutes outside of and unrelated to the Unemployment Compensation Act.

I am convinced that the information supplied by the employer in this case may not be obtained by search warrant or otherwise for the purpose of prosecuting the individual for violation of game and fish laws, rules or regulations. When this identical question was presented to the court in *State, ex rel. Employment Security Comm'n v. Leimback,* (No. 86-155, Order Granting Writ of Certiorari, Denying Application for Writ of Prohibition, and Reversing Order Allowing Search Warrant and Quashing Search Warrant, June 27, 1986), we held the information now sought could not be obtained by search warrant. We were correct then and are wrong now. I would reverse the order of the district court and quash the search warrant.