**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 9, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2435**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017FA943

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

LINDA ALBERT,

    PETITIONER-RESPONDENT,

 V.

MICHAEL ALBERT,

    RESPONDENT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Racine County:  MAUREEN M. MARTINEZ, Judge.  *Affirmed*.

        Before Neubauer, C.J., Gundrum and Davis, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.    Michael Albert appeals from a judgment of divorce and an order denying his motion for reconsideration.  He raises issues relating to expert testimony, a marital property agreement (MPA), the division and valuation of property, and attorney's fees.  For the reasons that follow, we affirm.

¶2      Michael and Linda Albert were married on July 4, 1993.  Prior to their marriage, they entered into an MPA.  The MPA detailed their individual property and provided that it would remain classified as individual during the marriage and upon divorce.  It also provided that any appreciation in the value of the individual property would remain classified as individual regardless of whether the appreciation was "attributable to market conditions or to the labor, efforts, inventiveness, physical or intellectual skill, creativity or managerial activity of either Party."

¶3      At the time the MPA was entered, Michael's individual property totaled $39,000, while Linda's totaled $692,756.  One of the items listed as Linda's individual property was a house in Wind Lake with a mortgage.  Because Michael was a union carpenter at the time the MPA was entered, and because it was anticipated that he would work on the house, the MPA included a provision pertaining to improvements of the homestead residence during the marriage.  It stated in relevant part:

> [I]n the event that the Parties are awarded a divorce … the net equity of said property shall be allocated as follows:
>
> First of all, the Parties shall receive as Marital Property all principal reduction which has accrued on loans encumbering the parcel resulting from payments made from Marital Property during the Parties' marriage.… Next, the parties shall receive as Marital Property an amount equal to all expenditures made by the Parties' [sic] from their Marital Property over the course of the marriage for improvement or maintaining said parcel.

¶4    As anticipated, Michael performed improvements to the Wind Lake house and contributed to mortgage payments during the marriage. He also progressed in his career, becoming a construction manager. Linda, meanwhile, accepted an early retirement package from her employer so that she could stay home with the couple's children, who are now adults. However, she continued to contribute to mortgage payments and family expenses from income earned from her investment accounts.

¶5    Linda filed for divorce on August 22, 2017. More than a year later, Michael filed a "Motion to Construe Marital Property Agreement." He alleged that there had been a substantial change in circumstances due to his efforts to improve the Wind Lake house. Accordingly, he asserted that the MPA, as it relates to the appreciation in the value of the house, was inequitable and should not be enforced.[1] After a hearing on the matter, the court concluded that the MPA was valid.

¶6    Michael retained an accountant/valuation analyst named Gaylene Stingl to apply the MPA to various financial records and opine as to the amount owed to him. After Stingl submitted her report, Linda had her financial advisor, Nicholas Enea, submit a rebuttal report. In it, Enea offered his own interpretation of the MPA and records used by Stingl. Michael moved to exclude Enea's testimony under *Daubert*.[2] Following another hearing, the circuit court denied the motion and the case proceeded to a court trial.

---

[1] Michael now insists that he did not seek to invalidate the MPA and never requested that it be ruled not binding.

[2] *See* *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

¶7      At trial, the primary issue concerned the interpretation of the MPA and its application to the Wind Lake house.  Michael argued that he should receive more than half of the appraised value of the house, which was valued at $561,000.  Meanwhile, Linda maintained that he was due a much smaller sum, amounting to half of the payments on the mortgage principal and a portion of the payments he made on a home equity line of credit spent on the improvement and maintenance of the house.

¶8      Ultimately, the circuit court awarded Michael $58,293.37 as reimbursement for his half of the mortgage payments and $28,717 for his half of the expenditures made on the improvement and maintenance of the Wind Lake house.  From this amount, the court deducted $30,000, based on Michael's withdrawal of money from an account held at Schwab shortly after Linda told him she was going to file for divorce.[3]  The court also found that it was "fair and equitable" for Michael and Linda to keep the personal property in their possession at the time of the divorce without offset or contribution from each other.  Finally, the court declined to award attorney's fees to either party.

¶9      Michael moved for reconsideration of the circuit court's decision, which the court summarily denied.  This appeal follows.

¶10      On appeal, Michael first contends that the circuit court erred in denying his motion to exclude Enea's testimony under *Daubert*.  He accuses Enea of bias and asserts that he lacked the necessary qualifications to testify as an expert witness.

---

[3]  Michael withdrew $60,000 from the Schwab account.  The circuit court determined that the account was marital property, and Linda was entitled to half of it.

4

¶11     We view the issue of expert testimony as largely a red herring in this case.  Again, the primary issue concerned the interpretation and application of an MPA.  An MPA is a contract and is analyzed applying the rules of contract interpretation.  *Steinmann v. Steinmann*, 2008 WI 43, ¶21, 309 Wis. 2d 29, 749 N.W.2d 145.  It is unclear why expert testimony was needed for that analysis.

¶12     Even if the circuit court erred in admitting Enea's testimony, we conclude that the error was harmless.  Enea's testimony did not figure prominently in the court's decision.  Indeed, the only time the court referred to it was in its discussion of the principal reduction of the mortgage on the Wind Lake house during the marriage.  The court described Enea's calculation as "helpful;" however, because the mortgage was paid off by the time of trial, the court could have arrived at a similar calculation on its own.

¶13     Michael next contends that the circuit court erred in its application of the MPA to the Wind Lake house.  He submits that he is entitled to far greater compensation for his numerous contributions to the house.

¶14     The problem with Michael's argument is twofold.  First, the MPA significantly limited his interest in the Wind Lake house by listing it as Linda's individual property and ensuring that any appreciation in its value would remain Linda's regardless of Michael's labor or efforts.  Second, to the extent that the MPA permitted compensation for contributions, it was for payments towards the reduction of the mortgage principal and expenditures made on improvement and maintenance.[4]  The court awarded both of those here.

---

[4] Michael also sought compensation for such things as interest paid on the mortgage and property taxes; however, those types of expenses were not awardable under the MPA.

¶15 Although Michael claims that it is impossible to determine how the circuit court arrived at the figure of $28,717 for his half of the expenditures made on improvement and maintenance, we disagree. The court arrived at that figure by considering those items of improvement and maintenance for which Michael provided values and comparing them with the items of improvement and maintenance for which Linda conceded Michael was due compensation. This was a reasonable approach, as Michael was unable to provide documentation for most of the work and amounts that he claimed.[5]

¶16 Michael next contends that the circuit court erred in deducting $30,000 from the amount it awarded him. He insists that the money he withdrew from the Schwab account shortly before the divorce was individual property, not marital property.

¶17 According to the MPA, the parties' individual property was property owned at the time of the marriage, property acquired by gift or inheritance, and any income from, appreciation of, or property received in exchange for, such individual property. Contributions to deferred employment benefits were also designated individual property. Because there was no evidence that the Schwab account fell within one of these categories, we are satisfied that the circuit court properly treated it as marital property and ordered the $30,000 deduction.

¶18 Michael next contends that the circuit court erred in its handling of the couple's personal property. He faults the court for not adopting his valuation

---

[5] Michael described his record keeping as "loosey-goosey" and acknowledged that he was "not a real big paper saver."

of the property and for not giving him items in Linda's possession that he requested at trial.

¶19     Again, there are multiple problems with Michael's argument.  As noted by Linda, while Michael hired a personal property appraiser to provide an appraisal of items at the Wind Lake house, he refused to have an appraisal of the items he took from the house despite Linda's request for one.[6]  Furthermore, Michael was given multiple opportunities to claim and collect additional items from the house and failed to do so.  Given these difficulties, the court reasonably resolved the situation by allowing the parties to keep the personal property in their possession at the time of the divorce without offset or contribution from each other.

¶20     Finally, Michael contends that the circuit court erred in declining to award attorney's fees to him.  He submits that he is entitled to fees based upon an alleged discovery violation—specifically, Linda's failure to admit that a truck in his possession was received as a gift from his mother.

¶21     Michael's argument for attorney fees is not particularly well-developed.  Moreover, it does not appear that he adequately raised it before the circuit court, which is required for appellate review.  *See State v. Caban*, 210

---

[6] Linda provided a list of items that Michael took from the Wind Lake house, which included artwork, all the lower-level office furniture, all weight room equipment, drawer chests and cabinets from the garage, a gun safe, a furnace, all tools, all hunting and fishing equipment, a lawn mower and other lawn tools, a snowblower, coolers, two dressers, file cabinets, mirrors, an inversion table, a television, a laptop, a small table and chair set, a bicycle, a canoe, and a rowboat.

Wis. 2d 597, 604, 563 N.W.2d 501 (1997). Accordingly, we cannot say that the court erred in declining to award attorney's fees.[7]

 *By the Court.*—Judgment and order affirmed.

 This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[7] To the extent we have not addressed an argument raised by Michael on appeal, the argument is deemed rejected. *See* **State v. Waste Mgmt. of Wis., Inc.**, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).