COURT OF APPEALS
DECISION
DATED AND FILED

December 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1148**

Cir. Ct. No. 2008ME208

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF J.D.A.:

OZAUKEE COUNTY,

PETITIONER-RESPONDENT,

V.

J.D.A.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Reversed.*

¶1     NEUBAUER, J.[1] Jane[2] appeals from an order of the circuit court extending her WIS. STAT. ch. 51 involuntary commitment and from an order for involuntary medication and treatment. As set forth by our supreme court in *Langlade County v. D.J.W.*, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277, the circuit court must "make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." Because the circuit court did not make specific factual findings as required to support its dangerousness determination, we reverse.

## BACKGROUND

¶2     Jane was initially involuntarily committed after Ozaukee County (the County) filed a commitment petition in 2008. Following several recommitment orders, the County again petitioned for recommitment and extension of her involuntary medication order in March 2021 for an additional year. The circuit court held a hearing on the County's petition.

¶3     The State's only witness at the recommitment hearing was Dr. Cary Kohlenberg. Kohlenberg testified that he did not review the original "treatment records" from 2008, but, in preparation for his testimony, he conducted a "record review" covering all treatment records for the last six years of Jane's commitment, as well as "some records" dating back to 2008. Jane declined to meet with Kohlenberg for his recommitment review. Kohlenberg stated that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We use a pseudonym to refer to the Appellant to protect her dignity and privacy rights. *See* WIS. STAT. RULE 809.86.

"prior to six years ago, there was a good deal of treatment noncompliance" because Jane was unwilling to be injected with psychotropic medications during that time. Over the last six years, his record review revealed Jane "has been much more compliant with the medication part of her treatment and somewhat more compliant with appointments." During that period, he testified, Jane fully cooperated with the injectable medication schedule. Kohlenberg agreed that Jane, who was receiving outpatient treatment, was "low maintenance" and did not require "a whole lot of intensive monitoring."

¶4 Jane had one visit with a treating doctor, via telephone, in the twelve months of treatment leading up to the recommitment hearing. The treating doctor did not testify at the hearing, but Kohlenberg stated that he reviewed a roughly one-page note that the treating doctor had prepared, which was the only treatment record specifically referenced during Kohlenberg's testimony. Kohlenberg stated that the note "documented [Jane] to be relatively stable" and that "[s]he had been following through with her medication … and ha[d] been receiving that regularly." It showed that she was following through with "prescription recommendations." Kohlenberg testified that he was unaware of a single missed medication appointment over the last year and told the court that it had been "at least" a year since Jane missed such an appointment.

¶5 The treating doctor opined that Jane was not voluntarily compliant and that she had "historically" asserted that she did not have a mental illness or require treatment. When asked specifically about Jane's "compliance," Kohlenberg testified that Jane "wants" to be compliant and has a desire to "follow the rules." Kohlenberg nevertheless believed that this desire to comply was not evidence of genuine "insight." On cross-examination, Kohlenberg testified that Jane had requested psychotherapy treatment over the last year and acknowledged

this was proof "to some degree" that her insight had improved. Kohlenberg testified that he was basing his opinion, in part, on one eight-minute phone call he had with Jane over a year earlier, in April 2020. During that call, he testified, she told him "she felt that she was well at that time and in … recent history." Kohlenberg also stated that Jane had not reported any thoughts of self-harm for "six years or more."

¶6 Kohlenberg opined that, based on his record review, he diagnosed Jane with "schizoaffective disorder bipolar type," although an alternative diagnosis of severe bipolar disorder was "possible." The former is an impairing, but treatable, "substantial disorder of thought, mood, perception, orientation, or memory."

¶7 Kohlenberg stated that there was no record of anyone having gone over the "advantages and disadvantages of [Jane's] medication" with her in the past year, but older records revealed that "in previous years it had been documented." He opined that Jane does not have "the capacity to make informed decisions in regards to her medication" because "she does [not] believe she has a mental illness." As to dangerousness, Kohlenberg testified that, but-for a recommitment order, Jane "would be a substantial risk to herself through depression and suicidality." He based that opinion on her "history of when she was more decompensated."

¶8 Jane also testified at the hearing. She told the court that she is "very happy and [her] life is going very well." Jane stated that she had been feeling "very well" for "years," although conceding that she had been "[d]epressed" "years ago." Jane attributed her well-being, in part, to her renewed religious faith, as well as to a restored relationship with her adult children that had been lacking in

earlier years. She testified that she was open to going to "counseling" "on a structured basis" to replace her medication therapy if she was released from her commitment. She was also "not opposed" to continuing to work with her current case worker, even if the commitment expired. When asked what she would do if given "the choice to take medication or not," Jane responded that she would "rather do counseling, through [her] pastor ideally."

¶9    After hearing the testimony and arguments, the circuit court found in relevant part as follows:

> And then when you look to see about the dangerousness, [Dr. Kohlenberg's] testimony really goes to the point of, if a commitment order isn't in place, that's where she would lapse back into the—kind of the similar situation to when she was back in 2008 because she does lack insight. She denies having a mental illness. And he might not have specifically said the statutory number, but from the testimony the Court will find that the County has met its burden, specifically in terms of the dangerousness, that being under [WIS. STAT. §] 51.20(1)(a)2.e. in that [Jane] is unable to appreciate the advantages and disadvantages of accepting the treatment and to make an informed choice so that the needs and care and treatment of there to be a substantial probability that she would suffer physical harm resulting in the loss of her ability to function independently in the community or the loss of volitional control over her thoughts or actions.

The court extended Jane's commitment and involuntary medication orders. Jane appeals.

**DISCUSSION**

¶10    "To prevail in a recommitment proceeding, the County must prove the same elements necessary for the initial commitment by clear and convincing evidence—that the patient is (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *D.J.W.*, 391 Wis. 2d 231, ¶31.

5

WISCONSIN STAT. § 51.20(1)(a)2.a.-e. sets out five standards as a means of proving dangerousness, "[e]ach requir[ing] the County to identify recent acts or omissions demonstrating that the individual is a danger to himself or to others." *Portage County v. J.W.K.*, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509.

¶11    However, in the context of a recommitment, because an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, the County is not required to prove recent acts or omissions and is instead allowed to show that there is a substantial likelihood of dangerousness should treatment lapse. *J.W.K.*, 386 Wis. 2d 672, ¶19. Accordingly, dangerousness in extension proceedings "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." WIS. STAT. § 51.20(1)(am).

¶12    Notably, this "standard is not more or less onerous" than the standard for initial commitment; "the constitutional mandate that [a] County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered." *J.W.K.*, 386 Wis. 2d 672, ¶24; *D.J.W.*, 391 Wis. 2d 231, ¶34 (WIS. STAT. § 51.20(1)(am) "does not change the elements or quantum of proof required" to prove dangerousness for a commitment extension). Thus, in order to recommit Jane under WIS. STAT. ch. 51, the County has the burden to show by clear and convincing evidence that she meets one of the five statutory standards of dangerousness set forth in WIS. STAT. § 51.20(1)(a)2.a.-e., and the circuit court is required to ground its decision in one or more of those standards. *See D.J.W.*, 391 Wis. 2d 231, ¶23 (citing § 51.20(13)(e)). "It is not enough that the individual was

at one point a proper subject for commitment." ***J.W.K.***, 386 Wis. 2d 672, ¶24. Thus, "[e]ach extension hearing requires proof of *current* dangerousness." ***Id.***

¶13 This review presents a mixed question of law and fact: We will uphold a circuit court's findings of fact unless they are clearly erroneous, but whether the facts satisfy the statutory standard of dangerousness is a question of law that we review independently. ***D.J.W.***, 391 Wis. 2d 231, ¶¶24-25.

¶14 Jane does not appear to contest that the circuit court properly found that she was mentally ill and a proper subject for treatment. She instead focuses her arguments in briefing on whether the evidence presented at the hearing supports a conclusion that she is or will become dangerous. She argues that her commitment and the associated involuntary medication and treatment orders must be reversed because the hearing evidence is insufficient to meet the dangerousness standard referred to by the court, WIS. STAT. § 51.20(1)(a)2.e. Jane also argues that the circuit court did not make the findings necessary to enable judicial review of the sufficiency of the evidence as required by ***D.J.W.***, 391 Wis. 2d 231, ¶44.

¶15 "[C]ircuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶40. The court in ***D.J.W.*** reasoned that this specificity would "clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence," as well as avoid the "guesswork" inherent in determining under which subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. a circuit court might have

intended to make its findings without those specific references. *See **D.J.W.***, 391 Wis. 2d 231, ¶¶42-45.[3]

¶16     As stated above, the circuit court here found that Jane was dangerous under the fifth standard, WIS. STAT. § 51.20(1)(a)2.e.  For Jane to be found dangerous under § 51.20(1)(a)2.e., the court must find that

> after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to ... her and because of mental illness, [Jane] evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to ... her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both [Jane]'s treatment history and ... her recent acts or omissions, that [she] needs care or treatment to prevent further disability or deterioration and a substantial probability that ... she will, if left untreated, lack services necessary for ... her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of [her] ability to function independently in the community or the loss of cognitive or volitional control over ... her thoughts or actions.  The probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2.e. if reasonable provision for [Jane]'s care or treatment is available in the community and there is a reasonable probability that [she] will avail ... herself of these services ....

¶17     The circuit court's obligation—as mandated by our supreme court—is to be specific as to the basis for its dangerousness determination. *See **D.J.W.***, 391 Wis. 2d 231, ¶40.  Although the circuit court here provided a specific

---

[3] We note that the County did not identify the dangerousness standard under which it was proceeding in either the recommitment petition or at the hearing.

subdivision paragraph under which it found Jane to be dangerous, the court did not satisfy the mandate from ***D.J.W.*** that it make "specific factual findings" regarding Jane's dangerousness under WIS. STAT. § 51.20(1)(a)2.e. *See **D.J.W.***, 391 Wis. 2d 231, ¶40. Reciting the language of the statute without discussing the specific facts supporting its legal conclusions is insufficient to support recommitting a person. *See **id.***, ¶43 ("With such an important liberty interest at stake, the accompanying protections should mirror the serious nature of the proceeding. Requiring circuit courts to provide specific factual findings … provides increased protection to patients to ensure that recommitments are based on sufficient evidence." (footnote omitted)); ***Winnebago County v. S.H.***, 2020 WI App 46, ¶17, 393 Wis. 2d 511, 947 N.W.2d 761 ("conclusory opinions parroting the statutory language without actually discussing dangerousness, are insufficient to prove dangerousness in an extension hearing"). Notably, while the County cites ***D.J.W.***, it does not address, much less establish, that the circuit court complied with its mandatory obligation to make specific factual findings.

¶18 Specifically, in rendering its dangerousness decision, the circuit court recited some of the language of the applicable subdivision paragraph on which it relied, and adopted ultimate conclusions offered by Kohlenberg—that Jane denied her mental illness, lacked insight, and would "lapse back into the—kind of the similar situation to when she was back in 2008."

¶19 Here, the court did not make any specific findings as to how the evidence presented at the hearing fit into the statute. Moreover, although the circuit court identified a subdivision paragraph to support its conclusion of dangerousness, it referenced only *a portion* of the applicable statutory language setting forth five elements in making its findings. The statute requires that *all five elements* of WIS. STAT. § 51.20(1)(a)2.e. be met in order to support a conclusion of

dangerousness under this section. **State v. Dennis H.**, 2002 WI 104, ¶25, 255 Wis. 2d 359, 647 N.W.2d 851 ("Only after each of these elements is proven may the person be considered 'dangerous' under the fifth standard.").

¶20 For example, under WIS. STAT. § 51.20(1)(a)2.e., a person is dangerous if, among other factors, there is

> a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

The circuit court did not address this provision, which requires consideration of whether, if left untreated, Jane would lack services necessary for her health or safety. *See Dennis H.*, 255 Wis. 2d 359, ¶23. Presumably, the court did not make such findings because no such evidence was presented at the hearing.

¶21 The statute also contains an explicit limitation on its reach: "The probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2.e. if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services ...." WIS. STAT. § 51.20(1)(a)2.e. The court did not make findings, again, presumably because no evidence was provided, as to whether reasonable provision for Jane's care was available in the community and if so, whether she would avail herself of the services.

¶22 Another element of the fifth standard requires proof that there is a substantial probability, as demonstrated by Jane's treatment history, that she needs care or treatment to prevent disability or deterioration. *See Dennis H.*, 255

Wis. 2d 359, ¶22. The court did not make any specific findings regarding Jane's treatment history, likely because very little evidence of Jane's treatment history was introduced at the hearing.

¶23 The circuit court also did not make findings that the advantages and disadvantages of Jane's medications had been explained to her. This is yet another required element under WIS. STAT. § 51.20(1)(a)2.e. and, under *D.J.W.*, the court was thus required to make findings regarding this element. *See D.J.W.*, 391 Wis. 2d 231, ¶40; *Dennis H.*, 255 Wis. 2d 359, ¶21; *see also Outagamie County v. Melanie L.*, 2013 WI 67, ¶54, 349 Wis. 2d 148, 833 N.W.2d 607 (before the circuit court can consider whether an individual can apply an understanding of the advantages and disadvantages of and alternatives to the particular medication or treatment, it must ensure that he or she has received "the requisite explanation" in order to make an informed choice). Here, Kohlenberg stated that there was no record of any explanation since the last commitment, and even as to any prior explanation, there was no evidence or findings as to what had previously been explained.

¶24 In sum, because it did not make specific factual findings related to the elements of the dangerousness standard set forth in WIS. STAT. § 51.20(1)(a)2.e., the court failed to comply with the supreme court's mandate from *D.J.W.*, and therefore, the court's recommitment order and associated involuntary medication order must be reversed. *See D.J.W.*, 391 Wis. 2d 231, ¶40; *see* WIS. STAT. § 51.61(1)(g)3m. (an order for involuntary medication and treatment follows a final commitment order under WIS. STAT. § 51.20(1)(a)2.e.).

¶25 The County argues on appeal that even if we conclude that the evidence is insufficient to support Jane's recommitment under the fifth standard,

11

we should conclude that it presented sufficient evidence to support a conclusion that Jane is dangerous under the first standard, WIS. STAT. § 51.20(1)(a)2.a. As we have explained, the circuit court failed to make specific findings sufficient to support recommitment under § 51.20(1)(a)2.e. because *D.J.W.* requires a circuit court to provide *both* the applicable subdivision paragraph *and* specific factual findings to support a recommitment decision. As noted above, the County failed to identify § 51.21(1)(a)2.a. in its petition and at the recommitment hearing. The court here did not specifically address § 51.20(1)(a)2.a., nor did it make the necessary factual findings regarding self-harm to justify our applying the first dangerousness standard on appeal as opposed to applying § 51.20(1)(a)2.e.[4] As the court explained in *D.J.W.*, requiring specific factual findings and that a court identify the subdivision paragraph it is applying serves to "clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making," as well as to avoid the "guesswork" inherent in determining under which subdivision paragraph of § 51.20(1)(a)2. a circuit court might have intended to make its findings without those specific references. *See D.J.W.*, 391 Wis. 2d 231, ¶¶44-45.

---

[4] The County makes numerous other arguments in its brief, including arguments largely unrelated to this case regarding jury trials and potential conflicts between the language of certain provisions of WIS. STAT. § 51.20 and our supreme court's opinion in *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. Given that we must reverse under *D.J.W.*, and our decision is dispositive, to the extent we have not addressed an argument raised by the County on appeal, the argument is deemed rejected. *See State v. Waste Mgmt. of Wis., Inc*., 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978). Also, we need not reach Jane's arguments regarding the sufficiency of the evidence. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.

## CONCLUSION

¶26 For the foregoing reasons, we conclude that the circuit court did not make the specific factual findings mandated by ***D.J.W.*** to support a conclusion of dangerousness under WIS. STAT. § 51.20(1)(a).e. We therefore reverse the recommitment and associated involuntary medication orders.[5]

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] Regarding the remedy, Jane requests that we reverse the orders, and the County does not object to that remedy. Indeed, the County did not request a remand for an additional hearing, and as such, we view this issue as forfeited. We note that the supreme court recently has accepted review and heard oral arguments in ***Sheboygan County v. M.W.***, No. 2021AP6, unpublished slip op. ¶14 (WI App May 12, 2021) to address the appropriate remedy when ordering reversal based on a failure by the circuit court to comply with the requirements of ***Langlade County v. D.J.W.***, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, given different remedies in recent court of appeals' decisions. *Compare M.W.*, No. 2021AP6 (reverse and remand for hearing) and ***Rock Cnty. Dep't of Human Servs. v. J.E.B***., No. 2020AP1954-FT, unpublished slip op. ¶27 (WI App Apr. 7, 2021) (same) *with **Outagamie County v. J.J.H.***, No. 2021AP244, unpublished slip op. ¶13 (WI App Sept. 14, 2021) (reverse, no remand for further hearing); ***Outagamie County v. L.C.E.***, No. 2021AP324, unpublished slip op. ¶10 (WI App Sept. 8, 2021) (same); ***Eau Claire County v. J.M.P.***, No. 2020AP2014-FT, unpublished slip op. ¶¶20-24 (WI App June 22, 2021) (same).

We assume that the County did not request a remand for additional factual findings by the circuit court because, as detailed above, there were no facts introduced at the hearing as to several of the elements of WIS. STAT. § 51.20(1)(a)2.e. In any event, because the order on appeal here expires in May 2022 and cases of this nature require a timely review, we reverse without remanding to the circuit court for further proceedings. It would be unlikely, if not impossible, for Jane to appeal from the results of a new hearing, if necessary, before her commitment order expires. *See L.C.E.*, No. 2021AP324, ¶10 ("The remedy of reversal also ensures that [the committee] is not deprived of her right to a meaningful appeal, as it would be almost impossible for [her] to appeal from the results of a new hearing, if necessary, before her current recommitment order likely becomes moot."). *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value). Because neither party requested remand nor briefed the issue, we assume without deciding here that any subsequent appeal would likely be moot.